### SARAH A. KENT v. CHARLES S. BENTLEY ET AL.

**1. FORFEITURE BY COMMISSION OF WASTE.**

Prior to March 19, 1887, in Ohio, estates for life, other than dower and curtesy, were not forfeitable for waste committed or suffered thereon by the life tenant.

**2. AMENDMENT NOT RETROACTIVE.**

Section 4177, of the Revised Statutes of Ohio, as amended March 19, 1887, does not affect such life estates vested prior thereto.

**3. RULE OF DAMAGES FOR WASTE.**

The true rule of damages for the wrongful or unlawful waste committed by a life tenant, is: "The diminished value of the estate in remainder by reason of such waste."

ON ERROR to the court of common pleas of Defiance county.

DAY, J.

The subject matter of the controversy is two hundred and forty acres of land in Defiance county, Ohio, sixty acres of which is timbered, and one hundred and eighty is farm and pasture land. Sarah A. Kent acquired an estate for life in the lands by will from her husband, long prior to March 19, 1887, and has been in the occupation and use of the same ever since title vested in her. The value of the timber consisted largely in its constituting a part of the realty, and affording timber for the requirements of the farm. In 1890, and later, the life tenant severed from the realty three or four hundred trees, oak, ash, cherry, etc., standing and growing on said land. Part of the timber so severed was used in repairing and improving the farm, and part was converted into cash, and, up to the time suit was commenced, had not been expended in repairs or betterments of the farm. A portion of the trees so cut were decayed and dying. Bentley and his co-defendants in error own the fee in said lands subject to said life estate, and are reversioners and tenants in common in the proportion of three-fifths to Bentley and two-fifths to his co-defendants in error.

Bentley commenced his action against Mrs. Kent, making his co-tenants parties defendant, charging her with the commission of waste in the cutting of timber and converting it to her own use, and in other respects, to the damage of the reversioners in the sum of more than $3,000.00, and asking relief touching the premises by judgment for the damage sustained, and an order or decree of forfeiture of the life estate because of such waste. The reversioners, other than Bentley, filed answers and cross-petitions substantially adopting the averments of the petition, and praying similar relief. Mrs. Kent, by an answer, denies all waste, and denies conversion of timber cut to her own use.

The issues thus joined were tried to the court without the intervention of a jury, and resulted in a finding against the life tenant, that she had committed waste of the lands to the damage of the reversioners, $800.00. After overruling a motion for new trial, the court entered judgment on the finding for $800.00, and also an order forfeiting the life estate for such waste. Mrs. Kent prosecutes error to obtain a reversal of the judgment and decree of forfeiture, and for a new trial, because of prejudicial error intervening and appearing in the record.

It is insisted by plaintiff in error, that the finding and judgment for $800.00 is not supported by sufficient evidence, and is against the weight of the evidence.

That timber, standing and growing on the farm, was cut and used by Mrs. Kent, was fully conceded by her. And as to the extent of the cutting, the number and kind of trees severed and used, there was but little controversy. But

every cutting and use of timber by a life tenant is not actionable. To an extent, for the purpose of repairing and improving the estate, to save dead or decaying timber, the life tenant has good right to so cut and use timber; may even cut and sell timber to enable him to pay taxes in certain circumstances. It is only where the cutting is wholly without right, and is wrongful, producing and occasioning real injury to the estate in remainder, that it can properly be made the basis of an action by the remainderman. The difficulty in this case seemed to be in discriminating and distinguishing between a legitimate and rightful use of timber by the owner of the life estate, and a wrongful use amounting to conversion and waste by her; and, if a wrongful use has been established, to make apparent by competent evidence the precise extent of the damage. The evidence tending to show a wrongful use was slight; very much of the testimony offered and received as tending to prove both the questions involved, was incompetent. This was especially true of the testimony produced to prove the extent of the the damage claimed. If it was proven that waste was committed—that trees were cut and wrongfully converted to the injury of those having the next estate, then Bentley and his co-owners were entitled to recover for the solid and permanent injury to their estate resulting from the wrong acts of the life tenant. The legal rule by which the damage must be measured, would be "the diminished value of the estate in remainder by reason of the waste committed or suffered by the life tenant." It is undisputed that part of the trees cut and used were decaying, and were properly cut, and some of them, at least, were used in repairs and necessary improvements on the farm; yet, in every instance, in propounding a question to a witness to elicit testimony as to the extent of damage, it was assumed that all the trees cut and used were cut and used wrongfully, and the witness formed and gave his estimate as to the extent of the damage on that basis. The stumps of all the trees cut were counted, and the whole number, whether rightfully or wrongfully cut, was made the basis upon which the amount of injury resulting from *wrongful* cutting was estimated and found by the court. Such way of proving and measuring damage is not believed to be accurate or productive of correct and satisfactory results. It is, in fact, radically wrong, and cannot be upheld. It leaves the case precisely as if no evidence was produced on the trial having a tendency to establish definitely the real amount of damage sustained; and in such case, the finding by the court of damage in the sum of $800.00 is not warranted or sustained by sufficient evidence, but is contrary to the evidence and the law.

Again, it is claimed by the plaintiff in error, that the judgment and decree is not warranted by the pleadings in the case, and is against the law and the evidence. By this it is intended to raise a question as to the propriety of the order of the court forfeiting the life estate of the plaintiff in error on account of waste committed or suffered on the premises. The decree of forfeiture was broad and radical, covering the entire ground. The entire estate of the life tenant, in the entire farm, was declared forfeited. Even under the present law this would be erroneous, unless it was made to appear that waste had been committed or suffered of the entire farm; and that is not claimed or proven. But plaintiff in error does not content herself with criticising the order of forfeiture on the ground that it is broader and more absolute than the evidence would warrant. The lawfulness of any decree at all is questioned; and the claim asserted that under the law as it existed at the time the life estate was created and vested, it was not forfeitable for waste. The order of forfeiture is assailed as being wholly unauthorized by any law, and as contrary to all law having application to the facts upon which the rights of plaintiff in error are based.

By express provision of the statute, as amended March 19, 1887, section 4177, Revised Statutes: "A tenant for ¹ fe in real property, who commits or suffers any waste thereto, shall forfeit that part of the real property of which such waste is committed or suffered, to the person having the immediate estate in reversion or remainder," etc. Prior to this amendment, in 1887, there was no

statutory provision forfeiting estates for life, other than dower and curtesy, for waste committed or suffered thereon by the life tenant. In this case there was no contract or devise providing for such forfeiture; and it would seem, in the absence of some such provision, that estates for life, in Ohio, other than dower and curtesy, were non-forfeitable for waste. This precise point has not been decided by the supreme court. The question, however, has been considered by the court in the case of *Jenks* v. *Langdon*, 21 Ohio St., 362–368, and the views of the court expressed by WELCH, C. J., who formulated the opinion of the court, using the following language: "As to the prayer for that form of relief, inserted in the petition (a prayer for the recovery of the land on the ground that the life estate was forfeited for waste), I think it may well be said, \* \* \* that it is a prayer without any allegations of fact to support it. I am not aware that by the law of Ohio a life estate, other than dower, is forfeited by the commission of waste thereon by the tenant for life. In the absence of statutory provision, contract or devise, I am not aware that such is now the law in any of the states." This, to be sure, is but a *dictum*, but it clearly indicates the opinion of the court of last resort, and, as we think, is a correct statement of the law of Ohio; sufficiently so to justify us in holding as we now do, that prior to March 19, 1887, in Ohio, estates for life, other than dower, were not forfeitable for waste. By the amendment of March 19, 1887, all estates for life, whether in dower or otherwise, are made forfeitable for waste, and the question for solution here is: Do the provisions of section 4177, as amended, have application to estates for life, other than dower, created and vested before the amended section was enacted, as the life estate in question was? Can the amended provisions of the law of 1887 be held to apply and control in such case, and the validity of the law maintained? Would not such holding subject the law to the imputation of being retroactive in effect, and so void, under section 28, of article 2, of the constitution, which provides: "The general assembly shall have no power to pass retroactive laws." Whether the amended statute would be open to the imputation of being retroactive, depends upon the effect upon the rights of the parties, which its application to the facts of the case would have. If it would have the effect to take away or impair vested rights, create a new obligation, or attach a new disability; in short, if it would create and confer a new right, its effect would be retroactive, and it could not be properly held to apply. It would be otherwise, however, if the effect would be purely remedial, and would only afford a new and more appropriate remedy than was before possessed, to enforce an existing right.

Judge STORY defines a retroactive law in the following language, which has been adopted and approved by the supreme court of this state in the 15 Ohio St., 207, and 50 Ohio St., 103, viz.: "Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past must be deemed retrospective." If we test the amended law of March 19, 1887, by these principles, the conclusion seems inevitable that, in its application to the facts of this case, it would operate retroactively. An estate for life, other than dower, was created and vested in the plaintiff by a transaction occurring prior to March 19, 1887. It was acquired under existing laws, which made such estates non-forfeitable for waste; and one of the most valuable rights or elements of the estate so acquired was that it was non-forfeitable—that the remainderman had no right to ask or have declared a forfeiture of the estate. The amended provision of the statute of March, 1887, if applied to the facts and conditions of the case, would fall within the definition of a retroactive statute, in the respect that it would take away this vested right of plaintiff in error to have and enjoy her life estate without fear of having it declared forfeited at the instance of the reversioners; and also, in the respect that it would attach to such estate an obligation or disability in favor of the reversioners that did not attach to it when the estate vested—that of liability to forfeiture for waste committed or suffered. It would not only deprive the life

tenant of a vested and existing right, but it would create and confer on the remainderman a right not before possessed. True, the law, in a sense, would be remedial, but it would be more than that. It would certainly afford a new and most effective remedy for waste to the owner of the next estate, and it would just as certainly create a distinctively new right in such owner; it would, also, deprive the life tenant of a most valuable vested right, acquired from a transaction already past. In view of these facts, the suggestion that the law, if applied, would be remedial, does not have the effect to relieve it from the imputation of being retro spective, but rather emphasizes the fact that the imputation is just.

The foregoing considerations impel us to the conclusion that the amendment to the law in question was not intended to apply, or in any way affect, the case under consideration, or any case having similar facts; and we are of the opinion that section 4177, Revised Statutes, as amended, was intended, and must be held to apply, only to estates for life, other than dower, created since its amendment on March 19, 1887.

We find error in the respects indicated, for which the judgment and decree of the common pleas will be reversed, with costs. The motion for new trial is allowed, and the cause is remanded for new trial and other proceeding in accord- ance with law.

MOORE and SENEY, JJ., concur.

Sutphen and Killits, for Plaintiff in Error.

Harris & Cameron and Thos. Emery, for Defendants in Error.